Story,
 
 J.
 

 delivered the opinion of the ¡Court as lOWS:.
 

 This is an information against twelve casks of merchandize, part of the cargo of the brig Ann, alleged to have been imported or put on board with an intent' to be imported contrary to the non-importation act of'1st March, 1809, Ch. 91, § 5.
 

 It appears from the evidence that the Ann sailed from Liverpool for New York in July, 1812, having on board a cargo of British merchandize. She was seized by
 
 &
 
 revenue cutter of the United States, on her passage towards New York, while in Long Island Sound, about' midway between Long Island and-Falkland Island.'and Carried into the port-of New Haven about the 7th of October, 4812, and immediately taken possession of by
 
 *290
 
 the collector of that poet, as forfeited to the United States. On the morning of the 12th of October the collector gave written orders for the release of the brig and cargó from the seizure, in pursuance of directions from the secretary ofth'e treasury, returned the shipVpapers to the master, and gave permission for the brig to proceed without delay to New York. Late in the. afternoon of the same day, the present informatibn was allowed by the district judge, and on the ensuing day, the brig and cargo were duly taken into possession by the marshal, under the usual monition from the Court. On the trial in the District Court, the property no.w in controversy was
 
 condemned;
 
 arid, upon an appeal, that decree was reversed in the Circuit Court.
 

 -It.has been argued that the decree of the Circuit Court ought to be affirmed, because, on the whole facts, the District Court Irad no jurisdiction over the cause: and tliis'argument is maintained on two grounds; first, That the original seizure .was made within the judicial district of New York; and, secondly, That if the seizure Was originally made- -within the judicial district of‘Connecticut., the jurisdiction thereby acquired by the District Court was, by the subsequent abandonment of-the Seizure and want of, possession, completely ousted.
 

 It is, unnecessary to consider the first ground,' because we are ail of opinion that sufficient matter is not disclosed in the evidence to enable the Court to decide whether the seizure was within the, district of New York or of Connecticut, or upon waters common to both.
 

 ■ .The second ground deserves great consideration. By the judicial act of the 24th September, .1789, ch. 2(i, «S 9, the District Courts are tested with “ exclusivp original “cognizance of all civil causes of admiralty and mari- “ time jurisdiction, including all seizures under laws of ,“ impost, navigation ' or trade of the United. States, “ where the seizures are Spade on waters navigable from “ the sea-by, vessels'of tenor more.tons burthen
 
 within
 
 “
 
 ifieir respécüve
 
 districts, as well as upon the high seas.” Whatever might have been the construction of the jurisdiction of the District Courts, if tire legislature- had .’stopped at the words “admiralty and, maritime jurisdidtiori,” it Seems manifest, by the. subsequent clause, -tliát
 
 *291
 
 the jurisdiction as to revenue forfeitures, was intruded to be given to the Court of the district, not where Lite offence was committed, but where the seizure was mad’-. And this with good reason, in order to institute'and perfect proceedings
 
 in rem,
 
 it' is necessary that the thing should be actually or constructively within thé reach ofihe Court. It is actually within its possession when it is submitted to the process of’'the Couft,\ it is constructively so, when, by a seizure, it is held to ascertain’ and-enforce a fight or forfeiture which can alone be decided by a judicial, decree-
 
 in
 
 rem. If the place of committing the offence had fixed the judicial forum where it was to be tried, the law'would,have been, in numerous cases, evaded; for, .by a removal of the thing from such place, the Court could have had no power,to enforce, its decree. The legislature, therefore, wisely ■determined that the place of seizure, should decide as to the proper -and'competent tribunal. It follows, ffom this consideration, that before judicial cognizaricp'can attach upon a forfeiture
 
 in rem,
 
 under the statute, there must be a
 
 seizure;
 
 for until seizure it is impossible to ascertain .what is the competent forum. And,, if .so,'it must-be a good subsisting seizure at the time when the libejor information is filed and allowed^" If a seizure be completely ami explicitly abandoned, and the property restored by the voluntary act of the party who has made the seizure, all rights under itaVegono. Although judicial jurisdiction once attached, it is divested by the subsequent proceedings j and it can be revived only by a new seizure. It is, in this respect, (ike a case of capture, which, although well made, gives no authority to the prize Court, to proceed to adjudication, if it be voluntarily abandoned before judicial, proceedings are instituted. It is not me aid to assert that a tortious ouster of- possession, or fraudulent rescue, lor relinquishment after seizure, will divest the jurisdiction. The case put (and it is precisely the present, case) is a voluntary abandonment and release of ,tfie property seized, the legal effect of which must, as we think, be to .purge away all the prior rights acquired by tlie seizure.-
 

 On, the whole, it is. the opinion of the majority of the Court that the decree of the Circuit Court ought to be affirmed.