## DOBBINS'S DISTILLERY *v.* UNITED STATES.

1. Where the owner of a distillery and other property connected therewith leased them for the purpose of distilling, the acts or omissions of the lessee in carrying on the business of distilling while he was in possession, and with intent to defraud the revenue, although they are unknown to the owner, subject the distillery and such other property to forfeiture to the United States.

2. The declarations of the lessee, voluntarily made subsequent to his arrest, are competent evidence against the owner to show the fraudulent intent of the lessee, as are also books, letters, memoranda, and bills of lading found on the premises in a room occupied by the latter.

ERROR to the Circuit Court of the United States for the District of Iowa.

The facts are stated in the opinion of the court.

*Mr. Robert G. Ingersoll* and *Mr. A. L. Merriman* for the plaintiff in error, cited Wharton, Crim. Law, 325.

*Mr. Assistant-Attorney-General Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Judicial proceedings *in rem*, to enforce a forfeiture, cannot in general be properly instituted until the property inculpated is previously seized by the executive authority, as it is the preliminary seizure of the property that brings the same within the reach of such legal process. *The Schooner Anne*, 9 Cranch, 289.

Due executive seizure was made in this case of the distillery, and of the real and personal property used in connection with the same; and the information in due form was subsequently filed praying for process, and that the property seized should be condemned by the definitive sentence of the court. Pursuant to the prayer of the information, the record shows that process of monition was issued in due form, and that it was duly served by the marshal. Sixteen causes of forfeiture were alleged in the information, all of which, except the first three, were abandoned at the trial.

Sufficient appears to show that the claimant was the owner of the distillery and all the other property seized, and that he, prior to the alleged causes of seizure and forfeiture, leased the property to the party in possession of the same at the time the alleged acts of forfeiture were perpetrated by the lessee and occupant. Three of the alleged causes of forfeiture only need be noticed, and they are in substance and effect as follows: —

1. That the lessee, occupant, and operator of the distillery neglected and refused to keep the books required by law, and make the required entries in the same; that he made false entries in the books kept in the distillery, and that he omitted to enter in the same the facts required by law, with intent to defraud the revenue, and to conceal from the revenue officers facts and particulars required to be stated and entered in such books, with like intent to defraud the revenue; and that he refused to produce the books kept in the distillery when thereto requested by the revenue officers, contrary to the statute in such case made and provided. 15 Stat. 132.

2. That the distillery, the distilled spirits, and distilling apparatus seized were owned by the lessee, occupant, and operator, and some other person unknown, and were intended to be used by the owners in the business of a distiller, in a manner to defraud the United States, contrary to the act of Congress.   Id. 142.

3. That the property seized was used by its owners to defraud the United States of the tax to which the spirits distilled were by law subject, and that the United States had been thereby defrauded of a part of such tax, in violation of law. Id. 59.

Service was made; and the owner and lessor of the distillery and other property seized appeared, and was permitted by leave of court to make defence.   His defence consists of an averment that he has no knowledge or information upon the subject of the information, and of a denial of each and every one of the charges made against the property seized.   Issue being joined, the parties went to trial, and the verdict and decree of condemnation were in favor of the plaintiffs.   Exceptions were duly filed by the claimant; and he sued out a writ of error, and removed the cause into this court.

Matters set forth in the bill of exceptions which are not assigned for error will not be re-examined.

Four errors are assigned, in substance and effect as follows: 1. That the court erred in admitting in evidence the statements of the lessee of the property, as contained in the first paragraph of the bill of exceptions.   2. That the court erred in admitting the evidence set forth in that part of the bill of exceptions denominated paragraphs 2 and 3.   3. That the court erred in charging the jury that it was unnecessary for them to find that the claimant was implicated in the frauds of the lessee and operator of the distillery, or that he had any knowledge of his fraudulent acts or omissions.   That if the jury find that the claimant leased the property to the occupant and operator for the purposes of a distillery, and that the lessee committed the alleged frauds, the government is entitled to a verdict, even though the jury should be of opinion that the claimant was ignorant of the lessee's fraudulent acts and omissions.   4. That the court erred in including the real estate in the decree of condemnation or forfeiture.

Instructions not included in the assignment of errors were given by the court to the jury, which deserve to be briefly noticed before proceeding to examine the rulings and instruction of the court, which, it is insisted, present a sufficient cause to reverse the judgment.

Requests for instructions having been presented by the claimant, and the same having been refused, the court, of its own motion, instructed the jury to the effect, that if the evidence satisfied the jury that the lessee and occupant of the distillery made sales of spirits produced by him which he omitted or neglected to enter in his books, with intent to defraud the government, or with intent to conceal from the officers the fact of such sales, then he would be guilty, and it would be their duty to find for the plaintiffs under the first article of the information ; that the mere absence of that party from the State or the country was not of itself evidence upon which they could base a verdict, but if they found that he absconded and fled from justice when detected and charged with the frauds alleged against him in the case, that that fact might be considered by the jury, with other evidence, as tending to prove his fraudulent intents and guilt; that the information is a proceeding to condemn and forfeit to the United States certain property, both real and personal, for alleged offences against the revenue law; that the property in question consists of a distillery, with its fixtures and apparatus, and the ground within the enclosure on which the distillery stands, together with the various articles of personal property enumerated in the information, and that the present defendant is the claimant of the property contesting the grounds of forfeiture assigned by the government; that the gist of the proceeding consists in the alleged fraudulent acts and omissions of the lessee and occupant of the distillery, or his agent and employés; and whether the charges against him be positive acts done by him, or omissions to do what the law requires of him, as a distiller, fraud is a necessary element in the case, without which there can be no forfeiture.

Evidence of the statements and declarations of the lessee and occupant of the distillery, voluntarily made while under arrest and afterwards, were offered by the district attorney, as tending to show his fraudulent intent in the doing and omitting to do

certain acts assigned in the information as causes of forfeiture; and the ruling of the court in admitting the same, subject to objection by the claimant, constitutes the first assignment of error.

Throughout the trial the claimant appears to have assumed, as the theory of the defence to the information, that he was the accused party, and that he was on trial for a criminal offence created and defined by an act of Congress. Instead of that, the forfeiture claimed in the information is aimed against the distillery, and the real and personal property used in connection with the same, including the real estate used to facilitate the operation of distilling, and which is conducive to that end as the means of ingress or egress, and all personal property of the kind found there, together with the distilled spirits and stills wherever found.

Nor is it necessary that the owner of the property should have knowledge that the lessee and distiller was committing fraud on the public revenue, in order that the information of forfeiture should be maintained. If he knowingly suffers and permits his land to be used as a site for a distillery, the law places him on the same footing as if he were the distiller and the owner of the lot where the distillery is located; and, if fraud is shown in such a case, the land is forfeited, just as if the distiller were the owner. Burroughs, Taxation, 67.

Cases arise, undoubtedly, where the judgment of forfeiture necessarily carries with it, and as part of the sentence, a conviction and judgment against the person for the crime committed; and in that state of the pleadings it is clear that the proceeding is one of a criminal character: but where the information, as in this case, does not involve the personal conviction of the wrong-doer for the offence charged, the remedy of forfeiture claimed is plainly one of a civil nature; as the conviction of the wrong-doer must be obtained, if at all, in another and wholly independent proceeding. 1 Bish. Crim. Law (6th ed.), sect. 835, note 1; *United States* v. *Three Tons of Coal*, 6 Biss. 371.

Forfeitures, in many cases of felony, did not attach at common law where the proceeding was *in rem* until the offender was convicted, as the crown, Judge Story says, had no right to

the goods and chattels of the felon, without producing the record of his conviction; but that rule, as the same learned magistrate says, was never applied to seizures and forfeitures created by statute *in rem*, cognizable on the revenue side of the exchequer court, for the reason that the thing in such a case is primarily considered as the offender, or rather that the offence is attached primarily to the thing, whether the offence be *malum prohibitum* or *malum in se;* and he adds, that the same principles apply to proceedings *in rem* in the admiralty. *The Palmyra,* 12 Wheat. 1.

Corresponding views were expressed by the same learned judge in a case decided at a much later period, in which he remarked that the act of Congress in question made no exception whatsoever, whether the alleged aggression was with or without the co-operation of the owners. Nor, said the judge in that case, is there any thing new in a provision of that sort. It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, or by the master or crew thereof, a wrong or offence has been committed, as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof, the necessity of the case requiring it as the only adequate means of suppressing the offence or wrong, or of insuring an indemnity to the injured party. *United States* v. *Brig Malek Adhel,* 2 How. 210.

Beyond all doubt, the act of Congress in question attaches the offence to the distillery, and the real and personal property connected with the same; the words of the act defining the offence being, that if any such false entry shall be made in said books, or any entry shall be omitted therefrom, with intent to defraud or to conceal from the revenue officers any fact or particular required to be stated and entered in either of said books, or to mislead the revenue officers with reference thereto; or if any distiller shall omit or refuse to produce either of said books, or shall cancel, obliterate, or destroy any part of either of said books, or any entry therein, with intent to defraud, or shall permit the same to be done, or such books or either of them be not produced when required by any revenue officer, — the distillery, distilling apparatus, and the lot or tract of land

on which it stands, and all personal property used in the business, shall be forfeited to the United States. 15 Stat. 133.

Nothing can be plainer in legal decision than the proposition that the offence therein defined is attached primarily to the distillery, and the real and personal property used in connection with the same, without any regard whatsoever to the personal misconduct or responsibility of the owner, beyond what necessarily arises from the fact that he leased the property to the distiller, and suffered it to be occupied and used by the lessee as a distillery.

Cases often arise where the property of the owner is forfeited on account of the fraud, neglect, or misconduct of those intrusted with its possession, care, and custody, even when the owner is otherwise without fault; and Judge Story remarked, in the case last cited, that the doctrine is familiarly applied to cases of smuggling and other misconduct under the revenue laws, as well as to other cases arising under the embargo and non-intercourse acts of Congress.

Controversies of the kind have arisen in our judicial history; and it has always been held in such cases that the acts of the master and crew bind the interest of the owner of the ship, whether he be innocent or guilty, and that in sending the ship to sea under their charge he impliedly submits to whatever the law denounces as a forfeiture attached to the ship by means of their unlawful or wanton misconduct.

Analogous views were expressed by Marshall, C. J., at a much earlier period. *United States* v. *The Little Charles*, 1 Brock. 347. Objection was there taken to the admissibility of the report and manifest made by the master of the schooner when she arrived at her port of destination, the schooner having been subsequently seized for an alleged violation of the embargo laws. Two grounds were assigned in support of the objection: 1. That the paper offered was not accompanied by the entry. 2. That the declaration of the master, if admitted in evidence, would affect the owner in a criminal case. Both were overruled. Reference will only be made to the reasons given for the second ruling.

Neither confessions nor admissions of the master, it was contended, were admissible to prove the guilt of the owner; and

the Chief Justice added, that, if the case was such as was supposed in argument, the objection would be entitled to great weight. But he remarked, that the proceeding was one against the vessel, for an offence committed by the vessel, which is not less an offence, and does not the less subject her to forfeiture because it was committed without the authority and against the will of the owner. It is held, said the Chief Justice, that inanimate matter can commit no offence. But the ship, as a body, is animated and put in action by the crew, who are guided by the master. The vessel acts and speaks by the master; she reports herself by the master. It is, therefore, not unreasonable that the vessel should be affected by this report.

Apply that rule to the case before the court, and it follows that the distillery, and the real and personal property used in connection with the same, must be considered as affected by the unlawful doings and omissions of the lessee and occupant of the property as a distillery, subject to the rules and regulations prescribed by Congress. *United States* v. *Distillery*, 2 Abb. (U. S.) 192.

Suppose that is so, still it is insisted by the claimant that the declaration of the lessee and occupant of the distillery made subsequent to his arrest were not competent evidence in the case; but the court is entirely of a different opinion, as the arrest of the lessee did not to any extent affect or change his relations to the property or to his lessor. If his lease was a subsisting one at the time of his arrest, his relations to the property and the owner of the same continued unaffected by that occurrence, nor is there any thing in the authority cited by the claimant which, when properly understood, asserts any different doctrine.

Statements made by the master of a ship as to what occurred during the voyage, tending to inculpate the owner in the guilty enterprise of the ship, are not admissible in evidence against the owner, where he is charged with a crime, if the statements were made subsequent to the time when he ceased to be master and the common enterprise had come to an end; but the rule has no application here, as the arrest of the lessee did not abrogate the lease, and, if the prosecution had failed, he might have

continued to operate the distillery in spite of the accusation contained in the information.

2. Certain private books, letters, and memoranda, found in an open box in a room occupied by the lessee and operator of the distillery as a private office, were also offered in evidence, to the admissibility of which the claimant objected; but, inasmuch as it appears that they were the books, letters, and papers of the person in whose office they were found, and that they related in part to the business of the distillery, it requires no argument to show that the objection of the claimant was without merit.

Other letters and bills of lading, found by the marshal in an open box in the room occupied by the same party as a private office, were also introduced in evidence, subject to the claimant's objection, which, it appears, were addressed to the operator of the distillery, and that they tended to prove the shipment by the distiller to the firm from which they came of large quantities of high-wines, and that the firm rendered accounts to the shipper of the sales as commission merchants.

Found as the papers were in the office of the distiller, it is too clear for argument that they were properly admitted, unless it be assumed that it was the claimant, and not the distillery and the property connected with the same, who was on trial.

3. Much discussion of the remaining error assigned will not be required, as it presents the same question in principle as that involved in the first assignment of error, which has already been sufficiently considered.

None of the material facts are in dispute, nor were they to any considerable extent at the trial. Beyond controversy, the title of the premises and property was in the claimant; and it is equally certain that he leased the same to the lessee for the purposes of a distillery, and with the knowledge that the lessee intended to use the premises to carry on that business, and that he did use the same for that purpose.

Fraud is not imputed to the owner of the premises; but the evidence and the verdict of the jury warrant the conclusion that the frauds charged in the information were satisfactorily proved, from which it follows that the decree of condemnation

is correct, if it be true, as heretofore explained, that it was the property and not the claimant that was put to trial under the pleadings; and we are also of the opinion that the theory adopted by the court below, that, if the lessee of the premises and the operator of the distillery committed the alleged frauds, the government was entitled to a verdict, even though the jury were of the opinion that the claimant was ignorant of the fraudulent acts or omissions of the distiller.

Viewed in that light, the legal conclusion must be that the unlawful acts of the distiller bind the owner of the property, in respect to the management of the same, as much as if they were committed by the owner himself. Power to that effect the law vests in him by virtue of his lease; and, if he abuses his trust, it is a matter to be settled between him and his lessor; but the acts of violation as to the penal consequences to the property are to be considered just the same as if they were the acts of the owner. *The Vrouw Judith*, 1 C. Rob. 150; *United States* v. *The Distillery at Spring Valley*, 11 Blatchf. 255; *Same* v. *The Reindeer*, 2 Cliff. 57; *Same* v. *Nineteen Hundred and Sixty Bags of Coffee*, 8 Cranch, 398; *Mitchell* v. *Torup*, Parker, 227.

Examined in the light of these suggestions, as the case should be, it is clear that there is no error in the record.

*Judgment affirmed.*